WARD, Judge.
This is a class action suit by residents and property owners of the lower coast of Algiers in New Orleans whose homes were damaged after torrential rains flooded the lower coastal area. They contend that they suffered damages to their property, emotional distress and false imprisonment when the Plaque-mines Parish Government blocked the natural drainage of the lower coast by constructing a temporary levee. They claim damages from the New Orleans Sewerage & Water Board because it did not have all of its *279 pumps working at the Algiers pumping station when the torrential rains indicated flooding was imminent. They also contend the Orleans Parish Levee District built the Donner Canal and its’ levees which operated as a trap for the rainwater, and that the Louisiana Department of Transportation and Development permitted the Plaquemines Parish Government to block the highway.
Plaintiffs have settled their claims with the Orleans Parish Levee District, and the trial court held the Louisiana Department of Transportation and Development not liable. This appeal concerns only the claims against the Sewerage & Water Board and the Plaquemines Parish Government.
By consent of the parties, the trial was bifurcated and questions of liability were considered by the trial court before questions of damages, since questions of damages would be moot if none of the defendants were liable. The question of liability was before the court without a jury, and the judge ad-hoc found that the Plaquemines Parish Government was liable for its intentional blocking of drainage and that the Sewerage & Water Board was liable for damages because of its negligence. Questions of damages, the amount and kind, were deferred to allow Plaquemines Parish and the Sewerage and Water Board an opportunity to appeal the finding of liability.
On appeal, Plaquemines Parish and the Sewerage & Water Board argue that the trial court’s ruling, which found the defendants caused an additional five inches of flooding, is manifestly erroneous because the evidence does not show that any act of defendants was the “cause in fact” of any flooding nor of any of plaintiffs damages. They contend the evidence showed that the flood damage would have occurred notwithstanding any act or omission on their part. They also deny responsibility for an unforeseeable “act of God.”
The Lower Coast of Algiers is part of a peninsula bordered by the Intereoastal Waterway, the Mississippi River, and the Donner Canal. The Donner Canal and its levee cut through the peninsula and divides the area almost equally, more or less tracking the boundary line between Plaquemines and Orleans Parishes. Thus, on one side is a part of Orleans Parish known as the Lower Coast of Algiers and on the other is Plaque-mines Parish.
Historically, Lower Coastal Algiers was a sparsely populated low, flat area. It is surrounded on three sides by the Mississippi River and its levees, and on the fourth side by the Intercoastal waterway and its levee. These levees more or less create a bowl-like effect, preventing drainage into the surrounding waters. To provide some drainage, the Donner Canal was built in 1930, and later a pumping station was built, designed and owned by the U.S. Corps of Engineers, but operated and maintained by the New Orleans Sewerage and Water Board by virtue of a contract with the Corps.
To improve drainage, in the 1970s, lateral canals perpendicular to the Donner Canal were constructed in Orleans Parish to drain the interior of the Lower Coast toward the Donner Canal and thence to the Sewerage & Water Board pumping station, DPS No. 11, located at the foot of the Donner Canal. As it was planned, drainage of the Lower Coast was accomplished by water entering the lateral canals and flowing into the Donner Canal which would . carry it to Sewerage & Water Board pumping stations which would in turn pump water out of the “bowl” and into the Intercoastal waterway.
By the 1970s, the Donner Canal and levee were in such bad shape that they required complete reconstruction. The canal and levee were rebuilt, again tracking the Parish lines, separating Orleans Parish from Plaquemines Parish, but the levee was constructed entirely on the Plaquemines Parish side. The canal was deepened, and the levee raised to a height of 25 CD[1] on the Plaque-mines Parish side. Thus, the Donner Canal and its levee when rebuilt cut off the Lower Coast of Algiers from the rest of the peninsula except for two large culverts and Louisi *280 ana Highway 406, a ground level crossing of the levee. On April 6, 1983, rain began falling heavily, causing flooding on the lower coast in the early afternoon. At 3:07 on the morning of April 7, the Sewerage & Water Board pump A began operating. The pumping station located at the foot of the Donner Canal, DPS No. 11, had two main pumps and a smaller one. Pumps A and B each had the capacity to move 250 cubic feet of water per second. The third is a small constant duty pump with thirty cubic feet per second capacity. Although it was apparent that flooding would occur because of the deluge, the Sewerage & Water Board was unable to use pump B because the feeder line that supplied power to it was out of service, and as a matter of fact, the service had been out almost three months, since January 9, 1983.
On the morning of April 7 various Plaque-mines Parish officials and Drainage Department workers monitored the rising water at the Highway 406 gap in the Donner Levee. Sometime around 3:00 in the afternoon of April 7, the Plaquemines Parish Government through one of its Commissioners decided to build a temporary levee across Highway 406 on the Orleans Parish side of the gap to block any flood water from coming into Plaquemines Parish. Plaquemines Parish workers used dump trucks and bulldozers to close the highway, and to fill the ditches on the levee sides with sandbags or sacks of clam shells. Thus flooding was averted for the most part in Plaquemines, but not in Orleans where plaintiffs resided or owned property, and the plaintiffs contend that they suffered damages because of additional flooding caused by Plaquemines Parish and the Sewerage & Water Board.
The resolution of this dispute turns largely on findings of fact. Only recently the Supreme Court has severely limited appellate review of facts, applying that limitation most stringently in situations where, as in this case, those findings represent a reasoned choice between one of either two or several different theories, all supported by expert testimony. In those situations, findings of fact are almost never manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989), Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
In this case, as the trial court observed, the most controversial issue is that of “cause in fact.” This issue is almost always a factual issue that must be left to the finder of fact, in this case, the trial judge.
Both defendants produced expert testimony to support various defenses going to the issue of “cause-in-fact.” One argument of both defendants centers on claims that this storm is one that occurs once every hundred or so years, and as such, it is an act of God which no one can prevent, and which no one caused. The trial court found that the crucial issue was whether either defendants’ acts or negligence was a “concurring” and “significant” cause. Relying on Brantley v. Tre-mont and Gulf Railway Company, 226 La. 176, 75 So.2d 236 (1954), the trial court held that an “act of God” or “force majeure” does not necessarily relieve defendants of responsibility, and that defendants’ acts or omissions were a “concurring” or “significant” cause of plaintiffs’ damages.
Plaquemines Parish makes another “cause in fact” argument; and offered proof to show that this “one hundred year storm” caused flooding early in the morning of April 7, and that the flood waters had crested by 3:00 P.M. that day. It was at this time, they contend, that the Plaquemines Parish officials decided to protect Plaquemines Parish by building the shell dam, believing that flooding had already occurred in Orleans Parish, and no other damage would be done. Thus, they contend their action did not cause any damage. This, however, is another factual issue decided by the trial court adversely to Plaquemines Parish, based on other evidence including the testimony of experts as to when the flood crested and whether the dam caused additional flooding.
The Sewerage & Water Board also makes a second “cause in fact” argument, and offered evidence to show that even if both pumps A and B were working at full capacity, there would have been flooding. Again, the trial court made findings of fact that failure to have both pumps working caused some of the damage, and this finding, just as the others, was based on an evaluation of *281 expert testimony where the trial court accepted one opinion over another.
Whether we agree or not with the trial court’s assessment of the expert testimony is immaterial; a reasoned choice by the finder of fact between different expert opinions will rarely, if ever, be manifestly erroneous. Rosell v. ESCO, Stobart, supra, particularly when relating to questions of “cause in fact.”
Although this appeal centers on questions of cause in fact, Plaquemines and the Sewerage & Water Board challenge findings of liability. The trial court relied upon La. C.C. articles 2315 and 2316. As to the Sewerage & Water Board, we have no difficulty upholding the trial court’s finding of liability under these articles: “Every act of whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Article 2315; and “Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.”; Article 2316. The trial court found the Sewerage & Water Board was negligent, basing its findings of fact on expert testimony and other evidence. Again, we cannot say those findings of fact, based on a reasoned choice between competing expert testimony for the most part, are manifestly erroneous. They will not be disturbed. Stobart, supra.
The trial court found Plaquemines liable for an intentional tort. Likewise, we uphold the finding of liability of Plaquemines Parish, but for other reasons. Under this factual situation, we cannot say Plaquemines Parish committed an intentional tort which would require a showing that Plaquemines either actively desired the consequences of their act, to wit: causing additional flooding in the lower coast, or must have averted to those consequences as reasonably certain to happen. We do not find support in the record to show that Plaquemines intended to cause flooding. Rather, the evidence is to the effect that Plaquemines’ officials thought the Lower Coast was already flooded and that a levee would only protect Plaquemines, not hurt the Lower Coast.
Nor do we find Plaquemines officials were negligent, and liability is not based on that premise. Nor do we believe a “trespass” is a basis for liability here. We believe, however, another solid basis for liability exists, a liability even without fault.
Louisiana has long recognized obligations of neighborhood or vicinage,[2] and La.C.C. art. 667 is such an obligation and pertinent to the situation of this case.
Art. 667. Limitations on Use of Property
Although a proprietor may do with his estate whatever he pleases, still he may not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
A proprietor need not be the owner. Any person assuming the position of owner may qualify.[3] Lombard v. Sewerage & Water Board, 284 So.2d 905, 914 (La.1973). In this case the Plaquemines Parish Government is certainly a neighbor and analogous to a “proprietor.” And while we also recognize that Plaquemines constructed the dam not on its “estate” but in Orleans Parish on State property which it did not own, it did so with the consent of the State DODT, assuming the position of an owner. We find Art. 667 should apply in this situation.
The application of Art. 667 also means that Plaquemines is liable even in the absence of a showing of fault. Lombard, supra, at 912, citing Daigle v. Continental Oil Co., 277 F.Supp. 875 (W.D.La.1967).
Plaquemines also claims it cannot be held liable when its conduct was an exercise of a governmental function, but this same argument was rejected in Lombard v. Sewerage and Water Board of New Orleans, supra:
We do not subscribe to this rationale. We know of no exculpatory principle, except sovereign immunity, which relieves public bodies or municipalities of the obligation to compensate those whose property it has *282 damaged in carrying on public works; and since sovereign immunity is not applicable here, there is none. p. 914
This court has considered the question of liability in a remarkably similar case, Ernst v. H.H. Burnstein Enterprises, Inc., 379 So.2d 852 (La.App. 4 Cir.1980). In that case an adjoining landowner built up his lots causing flooding on his neighbor’s land. This court, relying on Art. 667, held that the flooding was more than an annoying inconvenience which must be suffered by neighbors, and held that the landowners who had been damaged were entitled to have a restraining wall constructed and were entitled to damages.
In this case we construe the trial court’s finding in a similar manner, and even though Plaquemines Government was not “at fault” when it acted to protect the property of Plaquemines residents, as a matter of equity it should repair the damages it inflicted on other property to save that of its own or its citizens. And as the Supreme Court stated in Lombard, supra, at 914,
The burden of these operations cannot be shifted to individual property owners who, through no fault on their part, suffer damage on account of an activity for which a municipality is responsible.
The trial court found Plaquemines Parish and the Sewerage & Water Board caused at least five inches of additional flooding for which they are liable. Both Plaquemines Parish and the Sewerage & Water Board ask clarification as to who is responsible for the first 2½ additional inches which caused most of the damage. We do not construe the trial court judgment to mean that Plaquemines Parish and the Sewerage & Water Board are each separately liable. The issue, however, is not before us. Neither the exact manner of the flooding nor the amount of damages have been proven, and it would be unwise to render an advisory opinion. We are confident the trial court will give due consideration to the law of obligations with multiple persons, reserving the right of defendants to appeal any adverse decision they deem to be incorrect.
For the above reasons, we affirm the trial court’s findings of liability, and remand for trial on the issue of damages.
AFFIRMED.

. CD refers to “Cairo Datum,” an artificial measuring system which is used instead of sea level readings.

. Professor Stone prefers the former. Professor Yiannopoulos the latter.

. See Yiannopoulos, 32 La.L.Rev. 183, 186 (1972), Louisiana Civil Law Treatise, Tort Doctrine, by Professor Stone.